11-3284-cv
*Michael Karmilowicz v. The Hartford Financial Services Group, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of August, two thousand twelve.

PRESENT:

JOSÉ A. CABRANES,
PETER W. HALL,
RAYMOND J. LOHIER, JR.,

*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MICHAEL KARMILOWICZ,

*Plaintiff-Appellant,*

v.                                                                          No. 11-3284-cv

THE HARTFORD FINANCIAL SERVICES GROUP, INC.,

*Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFF-APPELLANT:**        Jonathan Sack, Sack & Sack, Esqs., New York, NY.

**FOR DEFENDANT-APPELLEE:**        Keara A. Bergin, Stephen M. Kramarksy, and Adam Michael Smith, Dewey Pegno & Kramarsky, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Michael Karmilowicz appeals from a judgment of the District Court dismissing his complaint against defendant-appellee The Hartford Financial Services Group, Inc. ("The Hartford"), for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We assume the parties' familiarity with the facts and procedural history of the case, and the issues on appeal, all of which we briefly summarize below.

## Background

Karmilowicz was a Managing Vice President in the Financial Products Division of The Hartford. As an executive at The Hartford, Karmilowicz was paid an annual base salary and was also eligible to participate in the company's profit-sharing based incentive compensation plans and a long-term incentive compensation plan. Four separate plans (the "compensation plans") are relevant to this appeal: the "Old Plan," the "New Plan," the Long Term Incentive Plan ("LTI") and the Performance Unit Plan ("PU").

In the fall of 2008, The Hartford suffered a dramatic deterioration in its financial condition due to the financial crisis, and, allegedly, to recklessness by The Hartford executives outside of Karmilowicz's Financial Products Division. As a result of the company's struggles, The Hartford applied for federal assistance under the Troubled Asset Relief Program ("TARP") in December 2008. Participation in TARP was conditioned upon the recipient's compliance with certain regulations, one of which prohibited TARP recipients from "paying or accruing any bonus, retention award, or incentive compensation during the period in which any obligation arising from financial assistance provided under the TARP remains outstanding." 12 U.S.C. § 5221(b)(3)(D)(i).

In June 2009, The Hartford sent Karmilowicz a TARP Executive Compensation Provision Memorandum (the "TARP Memorandum") and required that he sign it or else risk being terminated for cause. By signing the TARP Memorandum, Karmilowicz would have expressly waived his right to receive any unpaid incentive compensation. Juan Andrade, the president of The Hartford's Property and Casualty Division, allegedly told Karmilowicz that he had "a high degree of confidence that [The Hartford] would . . . make good on" at least some of the unpaid amounts. When Karmilowicz asked for such assurances to be put in writing, however, Andrade refused, saying "I

can't give it to you in writing, but you need to take that leap of faith." Karmilowicz refused to sign the TARP Memorandum and was therefore terminated for cause on or about June 12, 2009.

Karmilowicz brought suit in the Supreme Court, New York County, claiming that The Hartford had failed to make payment on allegedly vested awards due to him under the terms of the Old Plan, the New Plan, the LTI, and the PU, as well as for severance owed under The Hartford's Severance Policy. He advanced eight theories of relief: breach of contract, breach of implied contract, *quantum meruit*/unjust enrichment, promissory estoppel, breach of the covenant of good faith and fair dealing, conversion, and violation of New York Labor Law §§ 191 and 193.

The case was removed to the District Court, where The Hartford moved to dismiss the complaint under Rules 12(b)(6) and 9(c) of the Federal Rules of Civil Procedure.[1] The District Court granted The Hartford's motion, by a Decision and Order filed July 14, 2011. Karmilowicz timely appealed.

## Discussion

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo,* "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss, a court may consider the facts alleged in the complaint, together with "any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). We have cautioned that a plaintiff cannot "evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759,

---

[1] Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

3

762 (2d Cir. 1991); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

We affirm the judgment of the District Court, substantially for the same reasons articulated in its Decision and Order of July 14, 2011.

    *1.       The Breach of Contract Claims Were Properly Dismissed*

The District Court properly held that Karmilowicz's claims are defeated by the plain language of the compensation plans upon which they purport to rely. Though Karmilowicz did not attach these plans (or letters summarizing them) to his Complaint, The Hartford provided them to the court in support of its motion to dismiss, and the court properly consulted them. *See Rothman*, 220 F.3d at 88–89. As the District Court concluded, "[t]hese documents clearly indicate [that] The Hartford did not breach any contract. Indeed, the terms of the documents contradict [p]laintiff's claims, and their clear language—not the complaint's allegations—prevails."

The New Plan, for example, set out the following among its terms (with emphases added):

> *All incentive awards under this program are entirely discretionary.* Notwithstanding any other provision of the Plan, *no incentive will be due or payable except and to the extent approved after adjustment for extraordinary, unforeseen and uncontrollable circumstances* by the Senior Leadership . . . . Participation in the Plan *does not constitute a guarantee of award* for the entire Performance Period or any specific time period. . . .
>
> *The payment of any awards under the Plan to any employee are at the sole discretion of the Senior Leaders* who, at their discretion, may make adjustments deemed advisable in order to give consideration to actual versus expected business results . . . or other extraordinary events, and make adjustments to financial performance measures in recognition of such occurrences. Even though employees may be given progress reports regarding business results during the year, *no such statements or projections shall constitute a promise or guarantee that incentives will be paid under this program* at any particular time, to any particular employee, or in any particular amount. . . .
>
> *The provisions in this Plan may not be modified by any oral or implied agreement.*

4

Moreover, the New Plan conditioned the receipt of any payment by mandating that only "active employees . . . [with] continued employment through the payout date" are eligible to receive incentive awards.

Similarly, the LTI expressly stated that "[n]o Key Employee [*i.e.*, an employee eligible for participation in the LTI] shall have any claim to an Award until it is actually granted under the Plan" and cautioned that all "decisions, determinations or actions of the Committee made or taken pursuant to grants of authority under the Plan shall be made or taken in the sole discretion of the Committee and shall be final, conclusive and binding on all persons for all purposes." The PU, in turn, granted The Hartford "full power, discretion and authority to interpret, construe and administer the Plan" and specified that this discretion included the ability to cancel awards previously made if "significant events [occur] which the Committee expects to have a substantial effect on the applicable Performance Objectives." Like the New Plan, both the LTI and the PU required that a recipient be actively employed by The Hartford in order to receive any payment.

The Old Plan was apparently not committed to writing, but the letters sent to Karmilowicz each year reminded him that "the actual value realized from [his] Old Plan award may be more or less than estimated and that [he] must remain an active employee of . . . The Hartford organization at large at the time of actual payment to receive any award(s)." Moreover, it also cautioned that "no one is contractually entitled to any payment and The Hartford reserves the right to amend or terminate the Old Plan at any time."

In short, each of the compensation plans at issue here expressly stated that potential payments were within the sole, absolute, and exclusive discretion of The Hartford, that no employee had a right to any such payment until it was, in fact, paid, and that active employment with The Hartford was a condition precedent to receiving payment. Given the plain language in the compensation plans, the District Court was clearly correct to conclude that Karmilowicz could not state a claim for breach of contract under New York law.[2] Karmilowicz's arguments that Andrade's statements somehow modified the terms of the compensation plans and that The Hartford acted in bad faith in terminating him for cause before he could receive payment are without merit.

---

[2] That part of Karmilowicz's breach of contract claim that related to the Severance Policy was properly dismissed for the separate reason that the Severance Policy is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 *et seq.*, and "ERISA preempts those [state common-law claims] that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans," *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (internal quotation marks omitted); *see also* 29 U.S.C. § 1144(a).

*2.      The Quasi-Contract and Tort Claims Were Properly Dismissed*

The District Court was likewise correct in rejecting Karmilowicz's quasi-contract theories of recovery—namely, his claims for breach of implied contract, *quantum meruit*/unjust enrichment, and promissory estoppel. Under New York law, "quasi-contractual . . . relief is unavailable where [as here] an express contract covers the subject matter." *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988) (citing New York cases); *accord Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) ("[I]t is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside the contract will not lie." (internal quotation marks omitted) (alteration in original)); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) ("[U]njust enrichment [and] *quantum meruit* . . . . are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter."); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("A 'quasi contract' only applies in the absence of an express agreement . . . ."); *see also SAA-A, Inc. v. Morgan Stanley Dean Witter & Co.*, 281 A.D.2d 201, 203 (1st Dep't 2001) ("[W]here there is an express contract no recovery can be had on a theory of implied contract." (internal quotation marks omitted)); *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842 (1st Dep't 2011) (rejecting promissory estoppel claim because "a breach of contract claim may not give rise to tort liability unless a legal duty independent of the contract—*i.e.*, one arising out of circumstances extraneous to, and not constituting elements of the contract itself—has been violated." (internal quotation marks omitted)).

For similar reasons, the District Court was correct to dismiss Karmilowicz's claim for breach of the duty of good faith and fair dealing, *see Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."), and his conversion claim, *see Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't 1999) ("[A] claim to recover damages for conversion cannot be predicated on a mere breach of contract. Since the appellant's conversion []claim does not stem from a wrong which is independent of the alleged breach of [contract], it was properly dismissed." (citations omitted)).

*3.      The Claims Under New York's Labor Law Were Properly Dismissed*

Finally, the District Court properly dismissed Karmilowicz's claims under sections 191 and 193 of New York's Labor Law, because a plaintiff "cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages." *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632 (1st Dep't 1993). Inasmuch as we have held that Karmilowicz had no enforceable contractual right to the bonus payments, he cannot state a claim under sections 191 or 193.

6

**CONCLUSION**

We have considered all of Karmilowicz's arguments on appeal and find them to be without merit. Accordingly, the July 14, 2011, judgment of the District Court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk