Janet D'IORIO, Plaintiff,

v.

WINEBOW, INC., Defendant.

No. 12–CV–1205 (ADS)(ARL).

United States District Court, E.D. New York.

Jan. 18, 2013.

Leeds Brown Law, P.C., Carle Place, NY by Rick Ostrove, Esq., Bryan L. Arbeit, Esq., Of Counsel, Attorneys for the plaintiff.

Seyfarth Shaw LLP, New York, NY by Robert Steven Whitman, Esq., Barbara H. Borowski, Esq., Of Counsel, Attorneys for the defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On March 12, 2012, the Plaintiff Janet D'Iorio ("the Plaintiff") commenced this action by filing a Complaint against the Defendant Winebow, Inc. ("the Defendant"). The action seeks statutory, injunctive and equitable relief relating to the Defendant's alleged breach of fiduciary duty for its failure to disclose plan documents and its affirmative and/or negligent misrepresentation of benefits under its long-term disability and life insurance plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, the Plaintiff brings (1) a cause of action under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for the Defendant's alleged failure to provide or comply with a request for information by a participant or beneficiary, which a plan administrator is required to furnish and (2) a cause of action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to redress alleged violations by the Defendant of duties under ERISA.

Presently before the Court is a motion by the Defendant to dismiss the Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6). For the reasons set forth below, the motion is denied in part and granted in part.

## I. BACKGROUND

The following facts are derived from the Plaintiff's Amended Complaint, filed on March 12, 2012. In the resolution of this motion, the facts are construed in the light most favorable to the Plaintiff.

In 1997, the Plaintiff, a New York State resident, began working as a sales representative for the Defendant. The Complaint does not provide details as to the nature of the Defendant's business, except to indicate that the Defendant is a corporation registered under New Jersey State law and has its primary place of business is located in New Jersey.

According to the Complaint, the Plaintiff's pay while working for the Defendant was based on 100% of the sales commissions she earned. In this regard, the Plaintiff received "a minimum draw amount" regardless of the amount of sales commissions she earned in a given pay period. (Pl. Compl., ¶ 7.) However, in the event that the Plaintiff's sales commission did not meet this minimum draw amount, the difference was then subtracted from future sales commission earnings that were above the minimum draw amount.

In December 2008, the Defendant gave a PowerPoint presentation of the various welfare benefit plans offered by the Defendant to the Plaintiff and her co-workers. Included in this PowerPoint presentation was the Defendant's long-term and life insurance plan through its new carrier, UNUM, effective as of January 1, 2009. In the PowerPoint presentation, the Defendant described the long-term disability policy benefits as "66 2/3% of monthly earnings to a maximum of $15,000 per month" and that "long-term disability benefits were to be 'paid by [the Defendant] at no cost you [sic]." (Pl Compl., ¶¶ 10, 11, internal alteration omitted.) In addition, the PowerPoint presentation represented that the Defendant's life insurance policy

benefits were " '1x annual earnings up to a maximum of $150,000' and was 'paid by [the Defendant] at no cost you [sic]." (Pl. Compl., ¶ 12, internal alteration omitted.) Further, the Plaintiff alleges that the Defendant failed to furnish her with a copy of the required summary plan descriptions within 90 days after she became a participant in the plan.

In January 2010, the Plaintiff was seriously injured in a fall, which exacerbated her other medical conditions. The Complaint does not provide any further details about the Plaintiff's medical condition. In February 2010, she spoke with Erin McGinness ("McGinness"), a human resources representative for the Defendant, about disability leave and her benefits. McGinness advised the Plaintiff that she would have to first take a six-month short-term disability leave in order to become eligible for long-term disability. McGinness also advised the Plaintiff that her long-term disability benefits would be 66.66% of her income.

In mid-March 2010, the Plaintiff contacted McGinness and informed her that her last day would be at the end of the month. Thereafter, on April 5, 2010, the Plaintiff began a short-term disability leave.

In the beginning of September 2010, the Plaintiff contacted the Defendant about filling out her application for long-term disability benefits. By this time, McGinness was no longer employed by the Defendant, so the Plaintiff instead spoke with Nancy Duca ("Duca"), another human resource representative for the Defendant. Duca told the Plaintiff that her benefits would be based on income.

Also in September 2010, the Plaintiff filled out her required section of the long-term disability application; had her doctor complete his required section; and sent the application to UNUM along with an empty section, which was designated to be filled out by the Defendant. The Plaintiff called Duca to inform her that she had mailed the application to UNUM. Duca advised the Plaintiff that she had submitted the Defendant's part of the application to UNUM and included as the Plaintiff's earning the amount of her W2s for 2008 and 2009, along with a statement of earnings for her three months of work in 2010. These W2s indicate that the Plaintiff earned $108,654.13 in 2008, $110,793 in 2009 and $44,000 for the three months she worked in 2010. Duca told the Plaintiff that her long-term disability benefits would be based on these figures. In addition, during this call, the Plaintiff requested a copy of the long-term disability policy. Duca directed the Plaintiff to contact UNUM for a copy.

On or about September 28, 2010, UNUM sent the Plaintiff a letter in which it requested copies of her medical records from her treating providers and earning information from her employer. The letter was written by Lynn Patton ("Patton"), a disability benefits specialist with UNUM. The Plaintiff contacted Patton to ask about her benefits. Patton told the Plaintiff about aspects of the long-term disability plan as to which the Plaintiff was allegedly never previously informed. These aspects included (1) that approval was not automatic and there was thus a chance benefits could be denied; (2) that approval varied and it could not be determined when benefits would begin; and (3) that the Plaintiff's benefits would only be $3,333.34 a month, which was based on 66.67% of her $60,000 "salary." (Pl. Compl., ¶ 28.)

Subsequently, the Plaintiff had a teleconference with Duca and Michele Edelstein ("Edelstein"), the Vice President of Human Resources. Although Edelstein confirmed that the Plaintiff's application did not indicate that she earned $60,000, Edelstein reasoned that UNUM must have relied on the Plaintiff's draw amount of

$60,000. Edelstein stated that only this amount is covered under the long-term disability policy. According to the Plaintiff, since she "earned over $60,000 a year for over the past eight years," she "could have increased her draw amount, but did not do so because she relied on [the Defendant's] statements that benefits were calculated based on 'earnings.'" (Pl. Compl., ¶ 30.)

In November 2010, the Plaintiff's long-term disability benefits were approved. UNUM sent the Plaintiff a letter of approval dated November 2, 2010 informing her that her monthly payment would be $3,333.34. However, on or about November 16, 2010, UNUM sent the Plaintiff a letter informing her that there had been an overpayment on her disability claim and that her disability policy provides that Social Security benefits payable to the Plaintiff were to be subtracted from her monthly benefit. Thus, UNUM requested the return of an overpayment of $2,872 for the Plaintiff's first month payment and stated that the Plaintiff's new net monthly benefit payment would be $461.34.

In a letter dated November 20, 2010, UNUM informed the Plaintiff that her life insurance premium waiver claim had been approved and her coverage would continue without premium payments provided she met the definition of disability. According to the letter, the amount of coverage in the policy was $60,000.

In December 2010, the Plaintiff obtained a summary plan description of the long-term disability plan. The summary plan description included a section titled "What are your monthly earnings?" which stated that commissions and bonuses were excluded from the definition of monthly earning. The Plaintiff claims that this information was never provided to her while she was employed by the Defendant and was contrary to the information she was provided. The Plaintiff further claims that

"[t]he summary plan description is inaccurate, false and/or misleading since it omits any relationship between benefits calculation and an employee's draw amount." (Pl. Compl., ¶ 38.) In addition, the Plaintiff did not learn that her life insurance policy was also based on her draw amount until after she stopped working for the Defendant.

According to the Plaintiff, the Defendant (1) "failed to provide [her] with proper plan information and affirmatively and/or negligently misrepresented and omitted material terms of the long-term disability and life insurance plan"; (2) never "supplied [her] during her employment with either a summary plan description or any other material that would have informed how to calculate her disability benefits or life insurance benefit"; and (3) never "informed [her] that any Social Security Disability benefits would be deducted from her long-term disability benefits." (Pl. Compl., ¶¶ 35, 39, 40.)

## II. DISCUSSION

### A. Legal Standard under Fed.R.Civ.P. 12(b)(6)

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be

taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see also Karmilowicz v. Hartford Fin. Servs. Group,* 494 Fed.Appx. 153, 156 (2d Cir.2012). Only if this Court is satisfied that the Complaint cannot state any set of facts that would entitle the Plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993).

**B. As to Whether the Plaintiff has Stated a Claim Under ERISA § 502(c)(1)**

■ The Plaintiff's first cause of action asserts a claim under ERISA § 502(c)(1), alleging that the Defendant failed to provide or comply with her request for information by a participant or beneficiary, which a plan administrator is required to furnish. ERISA § 104(b)(4) requires that "the [plan] administrator[,][ ] upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Pursuant to ERISA §§ 502(a)(1)(A) and 502(c)(1), a beneficiary may bring a civil action when a plan administrator fails to supply requested plan information. *See* 29 U.S.C. §§ 1132(a)(1)(A), 1132(c)(1). Specifically, § 502(c)(1)(B) provides that when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request," a court, in its discretion, may hold the plan administrator "per-sonally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and ... may ... order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B).

However, in her Complaint, the Plaintiff never alleges that she made a written request for the summary description plan. Instead, the Plaintiff only claims to have made oral requests via her phone conversations with the human resource representatives employed by the Defendant. Accordingly, as Plaintiff's allegations do not state a claim under § 502(c)(1), this claim must be dismissed.

**C. As to Whether the Plaintiff Stated A Claim Under ERISA § 502(a)(3)**

The Plaintiff also asserts a cause of action for breach of fiduciary duty under ERISA § 502(a)(3). The Defendant challenges this claim on several grounds, including (1) that monetary damages, which the Plaintiff seeks, are not an available form of relief under ERISA § 502(a)(3); (2) that the Defendant did not violate ERISA § 104(b)(1)(A); and (3) that the Defendant did not misrepresent the terms of the plan or violate ERISA § 102. However, for the reasons that follow, the Court finds the Defendant's arguments unavailing and, therefore, denies the Defendant's motion to dismiss this second cause of action.

**1. As to Whether Monetary Damages are a Form of Equitable Relief Under ERISA § 502(a)(3).**

Under ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3),

A civil action may be brought [under ERISA] by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

The Defendant argues since the Plaintiff seeks monetary damages and not equitable relief, the Plaintiff's claim under ERISA 502(a)(3) must fail. The Court disagrees.

" 'Section 502(a)(3) has been characterized as a "catch-all;" provision which normally is invoked only when relief is not available under § 502(a)(1)(B).... The provision authorizes solely equitable relief[;] this means that money awards are available in suits brought under § 502(a)(3) only in very limited circumstances.' " *Spears v. Liberty Life Assur. Co.*, 885 F.Supp.2d 546, 552–53 (D.Conn.2012) (quoting *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578–79 (2d Cir.2006)); *see also Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) ("Section 1132(a)(3) permits money awards only in very limited circumstances. Classic compensatory and punitive damages are never included within other appropriate equitable relief.") (citations and internal quotation marks omitted).

In *Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2d Cir.1999), the plaintiff beneficiary sought a claim against the defendant fiduciary, seeking only to recover the $500,000 that she would have received had the fiduciary's alleged breach of fiduciary duty not resulted in her husband's group life insurance failing to become effective before his death. *Id.* at 143. The Second Circuit described the plaintiff's claim as "based on the alleged breach of a fiduciary duty, a claim that always has been within the exclusive jurisdiction of equity and that never has required a showing of unjust enrichment because the theory of the action is entirely different." *Id.* at 145 The Second Circuit further stated that the objective of "[t]he relief sought [in the case] ... [wa]s to eliminate the direct economic effect of an alleged violation of the statute" and "include[d] none of the other subjects of compensation found in traditional tort actions." *Id.* at 147. Thus, according to the Second Circuit, the relief sought was "simply a 'make whole' remedy," which "strongly support[ed]" the notion that it was " 'equitable' within the meaning of Section 502(a)(3)(B) of ERISA." *Id.* at 147–148. The Second Circuit concluded:

Actions for breach of trust historically were within the exclusive jurisdiction of equity. Congress appears to regard "make whole" relief such as that sought here as "equitable." Only such a construction would serve Congress' purpose of affording meaningful relief to benefit plan beneficiaries in circumstances such as these. We therefore hold that the relief sought here is "equitable relief" within the meaning of Section 502(a)(3)(B) and that such relief would be "appropriate" in the event plaintiff establishes liability on the part of [the defendant].

*Id.* at 150.

"[T]wo years later ... the Supreme Court's decision in *Great–West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), reconfigured the legal landscape of restitution," thereby impacting the way in which courts analyzed an ERISA § 502(a)(3) claim that sought monetary relief. *Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir.2005), *cert. denied*, 547 U.S. 1147, 126 S.Ct. 2286, 164 L.Ed.2d 812 (2006) (emphasis in original) (quoting *Knudson*, 534 U.S. at 214, 122 S.Ct. 708). In *Knudson*, the petitioner insurance companies sought reimbursement through an ERISA plan's reimbursement provision of a tort settlement amount based on medical benefits provided to the respondent beneficiaries. The petitioners characterized this relief as restitution, which they understood

to be a form of equitable relief. *Knudson,* 534 U.S. at 213, 122 S.Ct. 708. However, the Supreme Court held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708. The Supreme Court also explained:

> [S]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages ... since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. And money damages are, of course, the classic form of legal relief.

*Knudson,* 534 U.S. at 210, 122 S.Ct. 708 (citations and internal quotation marks and alterations omitted). Accordingly, the Supreme Court held that "[b]ecause petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize this action." *Id.* at 221, 122 S.Ct. 708. However, the Supreme Court did recognize that money awards might be available in suits brought under § 502(a)(3) in very limited circumstances, such as "suits that ... sought to prevent future losses that either were incalculable or would be greater than the sum awarded." *Id.* at 211, 122 S.Ct. 708.

Following the Supreme Court's decision in *Knudson,* in *Pereira v. Farace,* the Second Circuit found that the Supreme Court's reasoning "cuts across the grain of *Strom.*" 413 F.3d at 340; *see also Coan v. Kaufman,* 457 F.3d 250, 264 (2d Cir.2006) ("We recently recognized that the Supreme Court's reasoning in *Knudson* 'cuts across the grain of *Strom.*' ... [R]estitutionary monetary relief [i]s not 'equitable' under section 502(a)(3) when ... the defendants 'never possessed the funds in question and thus were not unjustly en-

riched.'") (citations omitted). Shortly thereafter, in *Coan v. Kaufman,* the Second Circuit held that "section 502(a)(3) requires both that the 'basis for [the] claim' and the 'nature of the recovery' sought be equitable." 456 F.3d at 264 (quoting *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006)). As a result, the Second Circuit reasoned that "[e]ven if breach of fiduciary duty is an equitable claim, [ ] remedies for breach of that fiduciary duty do not constitute 'equitable relief' under section 502(a)(3) unless the plaintiff seeks a 'categor[y] of relief that [was] typically available in equity.'" *Id.* at 264 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). As such, the Second Circuit denied the plaintiff's request for an injunction "requiring the defendants to restore funds to [a] defunct 401(k) plan to be distributed to former participants," because this relief "[did] not transform what is effectively a money damage request into equitable relief." *Id.* at 264 (citation omitted).

Nevertheless, more recently, the Supreme Court has indicated that monetary relief is, in fact, available under § 502(a)(3) in certain circumstances. In *CIGNA Corp. v. Amara,* —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), the Supreme Court reviewed the scope of the term "appropriate equitable relief" found in § 502(a)(3). According to the Supreme Court, this term referred to "those categories of relief that, traditionally speaking (*i.e.,* prior to the merger of law and equity) were *typically* available in equity." *Id.* at 1878 (citations and internal quotation marks omitted). The Supreme Court stated that an ERISA case "concern[ing] a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)," was

"the kind of lawsuit, that before the merger of law and equity, [ ] could have [been] brought only in a court of equity, not a court of law." *Id.* at 1878. Consequently, the Supreme Court reasoned that several traditional equitable remedies were available to a beneficiary, including (1) injunctive relief; (2) "reformation of the terms of the plan, in order to remedy the false or misleading information [the plan fiduciary] provided"; (3) estoppel to "h[o]ld [the plan fiduciary] to what it had promised"; and (4) in cases, for example, where "the District Court injunctions require the plan administrator to pay to [the beneficiaries] money owed them[,]" a surcharge remedy. *Id.* at 1879–80.

With regard to this fourth available equitable remedy, the Supreme Court found that "the fact that this relief takes the form of money payment does not remove it from the category of traditionally equitable relief." *Id.* at 1880. As the Supreme Court explained:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."
>
> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. Thus, insofar as an award of make-whole relief is concerned, the fact that [a] defendant ... is analogous to a trustee makes a critical difference. In sum, ... [this type of remedy] fall[s] within the scope of the term "appropriate equitable relief" in § 502(a)(3).

*Id.* at 1880.

It appears that the Second Circuit has yet to address the effect of the Supreme Court's decision in *CIGNA* on its previous precedents concerning § 502(a)(3) in cases like *Pereira* and *Coan.* However, district courts in this Circuit have interpreted the Supreme Court's ruling in *CIGNA* to permit monetary relief under § 502(a)(3) in certain cases. *See, e.g., McGuigan v. Local 295/Local 851 I.B.T. Employer Group Pension Trust Fund,* 11–CV–2004 (JG)(MDG), 2011 WL 3421318, at *4 n. 3, 2011 U.S. Dist. LEXIS 86085, at *17 n. 3 (E.D.N.Y. Aug. 4, 2011) ("The *Cigna* Court also explained that not all relief in the form of a money payment is categorically unavailable in § 502(a)(3) actions; a plaintiff proceeding pursuant to that section may, for example, seek a 'surcharge remedy' for a 'loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.") (quoting *CIGNA,* 131 S.Ct. at 1880); *Osberg v. Foot Locker, Inc.,* 907 F.Supp.2d 527, 534, 2012 WL 6062542, at *6 (S.D.N.Y.2012) ("A surcharge remedy for monetary compensation against a trustee (such as a pension plan administrator) requires the plaintiff to prove harm caused by the trustee's fiduciary breach or unjust enrichment.") (quoting *CIGNA,* 131 S.Ct. at 1880–81).

 Here, the Plaintiff is a beneficiary bringing a § 502(a)(3) claim against a plan fiduciary for its alleged breach of its fiduciary duty. This differs from the situation in *Knudson,* as well as *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), which the Defendant relies on to argue monetary damages are unavailable in a § 502(a)(3) action. In *Knudson,* as discussed above, the plan fiduciary brought an action against the tort-award-winning beneficiaries, while in *Mertens,* the beneficiary brought an action against a nonfiduciary, specifically a private firm that provided actuary services to the plan fiduciary. However, the factual situation present in this case is closely

analogous to the scenario before the Supreme Court in *CIGNA,* as both actions involve § 502(a)(3) claims brought against a plan fiduciary by a beneficiary. Therefore, following the guidance provided by the Supreme Court in *CIGNA,* this Court finds that equitable relief in the form of monetary compensation may be appropriate in this case.

In this regard, the Court finds that the Plaintiff's § 502(a)(3) cause of action seeks the equitable remedy of surcharge. In her Complaint, the Plaintiff alleges that the Defendant breached its fiduciary duty in that it "promised [the] Plaintiff a certain level of benefits based on her monthly earnings. [The Plaintiff] detrimentally relied on [the Defendant's] promise and received substantially less benefits as result of her reasonable reliance." (Pl. Compl., ¶ 52.) The Plaintiff further alleges that she

> detrimentally relied in that had [the] Plaintiff had known that her long-term disability benefits were based on her draw, [the] Plaintiff would have increased her draw to reflect her higher earnings and/or purchased a supplemental policy. If [the] Plaintiff was informed that any Social Security Benefits would be subtracted under the long-term disability plan with UNUM, [the] Plaintiff could have elected to purchase a supplemental long-term disability policy.

(Pl. Compl., ¶ 53.) In addition, the Plaintiff claimed that the Defendant never furnished her with a copy of the required summary plan descriptions within 90 days after she became a participant, as required by ERISA § 104(b)(1)(A), 29 U.S.C. § 1024(b)(1)(A). (Pl. Compl., ¶¶ 13, 14.)

■ Although the Plaintiff did not use the term "surcharge remedy" in her Complaint, "the essence of a cause of action is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated." *Oneida Indian Nation v. County of Oneida,* 617 F.3d 114, 139 (2d Cir.2010). Here, the Plaintiff suggests that, because of the Defendant's alleged breach of its fiduciary duty, she suffered a loss in that she detrimentally relied on the Defendant's material misrepresentations and omissions and thus, never increased her draw amount to reflect her actual yearly earnings. As a result, her long-term disability benefits and life insurance benefits were significantly lower that they would have been had the Defendant provided her with this information concerning the connection between her benefits and her draw amount. *Cf. CIGNA,* 131 S.Ct. at 1881–82 ("[A] fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence. That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents.").

Accordingly, making all reasonable inferences in favor of the Plaintiff, the Court finds that the Plaintiff has alleged facts which establish surcharge remedy as an equitable basis for the monetary relief that she seeks. *See, e.g., Simonton v. Runyon,* 232 F.3d 33, 36–37 (2d Cir.2000) ("[G]enerally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim.") (citation and internal quotation marks omitted); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 (2d Cir.1997), *abrogated* on *other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion the failure in a complaint to cite a statute, or to cite the

correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.") (citation and internal quotation marks omitted); *Sabilia v. Richmond*, 11 Civ. 739(JPO)(MHD), 2011 WL 7091353, at *26, 2011 U.S. Dist. LEXIS 152228, at *79–80 (S.D.N.Y. Oct. 26, 2011) ("That plaintiffs did not label these allegations as a breach-of-contract claim is not fatal to their pleading, since we must look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those factual allegations.") (citations omitted).

However, the Court notes that the Plaintiff has failed to state a § 502(a)(3) claim under a theory of estoppel or reformation. With regard to the former, the Second Circuit has held that "under extraordinary circumstances principles of estoppel can apply in ERISA cases. The elements of estoppel are (1) material representation, (2) reliance and (3) damage." *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (citation and internal quotation marks omitted). The Plaintiff's Complaint establishes these three elements. Nevertheless, the Court finds that the Plaintiff has not set forth extraordinary circumstances so as to permit this Court to apply the doctrine of estoppel in this case.

█ "[T]he facts demonstrating extraordinary circumstances must go beyond a simple showing of reliance on a promise, harm and injustice, as would be required of any estoppel claim." *Giordano v. Coca–Cola Enters.*, CV 08–0391(WDW), 2011 WL 839507, at *7, 2011 U.S. Dist. LEXIS 22651, at *23 (E.D.N.Y. Mar. 7, 2011) (citation and internal quotation marks omitted). Rather, "[c]ourts have looked, for example, for some remarkable consideration that the employer may have derived, such as resignation of employment or foregone salary, and have found no grounds for estop-

pel where the plaintiff failed to allege such circumstances." *Id.* Indeed,

> [c]ourts in this circuit have tended to find extraordinary circumstances where an employer induced an employee to take some action that benefitted the employer by offering benefits to the employee which were later reneged.... [A] showing of intentional (or fraudulent) inducement is not the only way extraordinary circumstances may be found in this circuit.... [S]everal courts in the circuit have recognized extraordinary circumstances absent intentional inducement where an employer promised benefits to an employee in good faith in an intentional effort to induce the employee to take some action, and the employer later reneged on its promise.

*Arnold v. Storz*, 00–CV–4485 (CBA), 2005 WL 2436207, at *6, 2005 U.S. Dist. LEXIS 35971, at *18–20 (E.D.N.Y. Sept. 30, 2005) (citations and internal quotation marks omitted). No such circumstances have been alleged here, as the Plaintiff does not claim that the Defendant received any sort of remarkable consideration as a result of their alleged misrepresentations.

█ Similarly, to the extent the Complaint raises a theory of reformation, it must also fail in this case. "A mutual mistake of the parties, or ... a mistake on plaintiff's part and a fraud by defendant are the classic grounds for reformation of an instrument in equity." *Scarangella v. Group Health, Inc.*, No 05 Civ. 5298(RJS), 2009 WL 764454, at *19, 2009 U.S. Dist. LEXIS 23457, at *55 (S.D.N.Y. Mar. 24, 2009) (citations and internal quotation marks and alterations omitted). "The proponent of reformation must show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *Id.* at *19, 2009 U.S. Dist. LEXIS 23457 at *55–56 (citations and internal quotation marks

omitted). As the Plaintiff's Complaint raises no factual allegations suggesting the existence of either mutual mistake by the parties or fraud on the part of the Defendant, the remedy of reformation is unavailable in this action.

### 2. As to Whether the Defendant's Alleged Violation of ERISA § 104(b)(1)(A) Supports a Breach of Fiduciary Duty Claim Under ERISA § 502(a)(3)

■ The Court also rejects the Defendant's argument that the Plaintiff failed to adequately allege that the Defendant breached its fiduciary duty and, therefore, the Plaintiff's § 502(3)(a) claim must be dismissed. In this regard, "ERISA § 404(a)(1)(B) imposes a duty on fiduciaries (which include plan administrators) to 'discharge [their] duties with respect to a plan solely in the interest of the participants and ... with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Wilkins,* 445 F.3d at 579 (quoting 29 U.S.C. § 1104(a)(1)(B)) (alteration in the original). In this case, the Plaintiff argues that the Defendant breached its fiduciary duty in part because it failed to comply with ERISA § 104(b)(1)(A).

As an initial matter, the Defendant suggests that the Court cannot consider the Plaintiff's ERISA § 104(b)(1)(A) claim because (1) "the Complaint refers to section 104(b)(1)(A) in the 'Facts' section, ... [but] there is no reference to that provision in the 'Causes of Action' section" and (2) "the Complaint nowhere refers to a breach of fiduciary duty for failure to provide the [summary description plan] pursuant to section 104(b)(1)(A)." (Def. Reply, pg. 7, emphasis removed.) However, as discussed above, "generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." *Simonton,* 232 F.3d at 36–37 (citation and internal quotation marks omitted); *see also Northrop,* 134 F.3d at 46; *Sabilia,* 2011 WL 7091353 at *26, 2011 U.S. Dist. LEXIS at *79–80.

Here, the Defendant does not dispute that the Plaintiff's Complaint references ERISA § 104(b)(1)(A). (*See* Pl. Compl., ¶ 13.) Moreover, the Complaint alleges that the Defendant failed to comply with ERISA § 104(b)(1)(A) in that it "failed to furnish to [the] Plaintiff a copy of the required summary plan descriptions within the required statutory time frame." (Pl. Compl., ¶ 14.) In addition, the Complaint states that the "Plaintiff asserts a cause of action under ERISA § 502(a)(3) to redress violations by the Defendant of duties under ERISA. 29 U.S.C. § 1132(a)(3). This includes, *but is not limited to,* breaches of fiduciary duties imposed by ERISA under § 40, 29 U.S.C. § 1109." (Pl. Compl., ¶ 51, emphasis added.) The Complaint goes on to assert that the Defendant's "failure to provide a summary plan description ... constitute a breach of [the Defendant's] fiduciary duty as plan administrator to the Plaintiff as a plan participant and beneficiary." (Pl. Compl., ¶ 54.) As such, the Defendant was aware of the circumstances that would give rise to the Plaintiff's claim for relief under ERISA §§ 104(b)(1)(A) and 502(a)(3).

ERISA § 104(b)(1)(A) requires a plan administrator to "furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description ... within 90 days after he becomes a participant, or (in the cases of a beneficiary) within 90 days after he first receives benefits[.]" 29 U.S.C. 1024(b)(1)(A); *see also Watson v. Consol. Edison Co. of N.Y.,* 374 Fed.Appx. 159, 163

(2d Cir.2010) ("ERISA requires plan administrators to provide a SPD to its participants setting forth certain information and to 'make reasonable efforts to ensure each plan participant's actual receipt of the plan documents.'") (quoting *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 170 (2d Cir.2005)). The Complaint alleges that the Defendant failed to comply with this provision of ERISA. Although the Defendant attaches exhibits to its reply papers in an attempt to counter the Plaintiff's allegations, such evidence is inappropriate for consideration by this Court on a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir.2010) ("In ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); *Hahn v. Rocky Mt. Express Corp.*, No. 11 Civ. 8512(LTS)(GWG), 2012 WL 2930220, at *2, 2012 U.S. Dist. LEXIS 100466, at *4–5 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss, the Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. Evidence outside these parameters may be introduced in connection with a motion for summary judgment; it cannot, however, be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted). Accordingly, because "an employer's failure to provide an SPD may be cognizable as a separate claim for breach of fiduciary duty," the Court finds the Plaintiff has stated a breach of fiduciary duty claim under § 502(a)(3) based on the Defendant's alleged violation of § 104(b)(1)(A). *Weinreb*, 404 F.3d at 171 n. 1.

**3. As to Whether the Defendant's Alleged Misrepresentations and Alleged Violation of ERISA § 102 Supports a Breach of Fiduciary Duty Claim Under ERISA § 502(a)(3)**

█ In addition, if true, the facts alleged by the Plaintiff in her Complaint are sufficient to state a § 502(a)(3) claim for breach of fiduciary duty based on the Defendant's alleged misrepresentations and violation of ERISA § 102. The Second Circuit has held that "[w]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir.2001) (citation omitted).

At the outset, the Court notes that the Defendant's reliance on *Ladouceur v. Credit Lyonnais*, 584 F.3d 510 (2d Cir. 2009), in which the Second Circuit held that "[o]ral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan," is inapplicable. *Id.* at 512 (citation and internal quotation marks and alterations omitted). This is because the Plaintiff's Complaint asserts that the Defendant made its misrepresentations in a PowerPoint presentation, which the Court deems to be a written representation. *See, e.g., Schwarz v. ThinkStrategy Capital Mgmt. LLC*, 2012 WL 2026365, 2012 U.S. Dist. LEXIS 79453 (S.D.N.Y. May 31, 2012) (describing "written materials regarding [the defendant's] Fund" as "includ[ing] ... a 'Fund Overview[,]' ... in PowerPoint format"); *Ribble v. Kimberly–Clark Corp.*, Case No. 09–C–643, 2012 WL 589252, at *14, 2012 U.S. Dist. LEXIS 21822, at *42–43 (E.D.Wis. Feb. 21, 2012) (characterizing "[t]he 186–

slide PowerPoint presentation to [the defendant's] Board of Directors regarding the Global Business Plan" as "the only written recitation of the Plan").

Further, according to the Plaintiff's Complaint, the Defendant's December 2008 PowerPoint presentation stated the following: (1) that the long-term disability policy benefits were "66 2/3% of monthly earnings to a maximum of $15,000 per month" and (2) that the life insurance policy benefits were "1x annual earnings up to a maximum of $150,000." (Pl. Compl., ¶¶ 10, 12.) However, it appears—and the Defendant does not contest—that this PowerPoint presentation did not include the definitions of "monthly earnings" and "annual earnings" from the summary plan description or inform the Plaintiff that the monthly earnings were based on her draw amount, which she could adjust. Therefore, the PowerPoint presentation was not, as the Defendant argues, materially consistent with the summary plan description. Instead, it was a misleading written representation in that it failed to provide material information to the Plaintiff, which it should have reasonably known would have caused her harm. Such "misleading statements concerning an ERISA plan may support a claim for breach of fiduciary duty under ERISA." *See Younger v. Zurich Am. Ins. Co.*, 11 Civ. 1173(TPG), 2012 WL 1022326, at *3, 2012 U.S. Dist. LEXIS 42190, at *7 (S.D.N.Y. Mar. 26, 2012).

Moreover, ERISA "[§ ] 102 and related provisions of ERISA require that a summary plan description be furnished to all participants and beneficiaries of an employee benefit plan and that it reasonably apprise participants and beneficiaries of their rights and obligations under the plan." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007). In this regard, ERISA § 102(a) states that "[a] summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). ERISA § 102(b) provides, in relevant part, that "[a] summary plan description shall contain ... the plan's requirements respecting eligibility for participation and benefits ... [and the] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits[.]" 29 U.S.C. § 1022(b). *See also Wilkins*, 445 F.3d at 580.

Assuming that the Plaintiff's allegations are true, although the summary description plan contains definitions as to the terms "monthly earnings" and "annual earnings," including that an employee's commission is excluded from the calculation of benefits, it fails to explain that an employee's earnings are actually based on her monthly draw amount, which can be adjusted by the employee to reflect her actual earnings and, thus, ensure higher long-term disability and life insurance benefits. Consequently, the Plaintiff has adequately alleged that the Defendant failed to provide material information to the Plaintiff even though the Defendant should have known that such an omission could cause harm. *See Younger*, 2012 WL 1022326 at *3, 2012 U.S. Dist. LEXIS at *7 ("[A]n ERISA fiduciary 'has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan.'") (quoting *Becher v. Long Island Lighting Co. (In re Long Island Lighting Co.)*, 129 F.3d 268, 271 (2d Cir.1997)). Accordingly, the Plaintiff has stated a claim for breach of fiduciary duty under § 502(a)(3).

Finally, the Court finds it premature to dismiss the Plaintiff's § 502(a)(3) claim concerning the deduction of Social Security

disability payments from the Plaintiff's long-term disability benefits. While the summary description plan appears to comply with ERISA § 102 in that it provides clear notification that Social Security disability payments will be deducted from long-term disability benefits, (*See* Michele Edelstein Decl., Exh. A.), as discussed above, the Complaint alleges that the Plaintiff did not receive the summary plan description. As such, the Complaint suggests that the only information the Plaintiff received about her benefits was from the PowerPoint presentation. If true, the Court finds that the Plaintiff has stated a breach of fiduciary claim for failing to inform her that her Social Security disability payments would be deducted from her long-term disability benefits.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED the motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) is hereby denied in part and granted in part. The Court grants the Defendant's motion to dismiss the Plaintiff's ERISA § 502(c)(1) cause of action. The Court denies the Defendant's motion to dismiss the Plaintiff's remaining ERISA § 502(a)(3) cause of action.

**SO ORDERED.**